THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL I. MUNGUIA, Defendant-Appellant.

(No. 74-13; ■■■■■■■■)

Second District (1st Division)—December 11, 1975.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Martin P. Moltz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of this court:

The defendant, Michael I. Munguia, charged in an indictment with murder, was found guilty in a jury trial of voluntary manslaughter and was sentenced to a term of 4-12 years. On appeal defendant contends:

"(1) That he was not proven guilty beyond a reasonable doubt of voluntary manslaughter; (2) that the trial court erred in instructing the jury; (3) that the trial court erred in allowing the State to impeach a defense witness on collateral matters; (4) that the trial court abused its discretion in failing to discharge or recess the deadlocked jury; and (5) that the sentence imposed was excessive."

About 11 p.m. on July 17, 1973, the defendant, his roommate, Jorge Madrigal, and Leo Barrientos were enroute to the Railroad Tap, a tavern in Bensenville. Along the way they picked up a hitchhiker, whose name they later learned was Dagoberto Garcia. An argument soon ensued between Garcia and Barrientos, which continued during the remainder of the trip. Upon arriving at the Railroad Tap, defendant asked Garcia and Barrientos to stop arguing. Garcia then asked the defendant if he had any money. Garcia then became belligerent, swore at defendant and demanded that defendant buy him some beer. The defendant was then

struck and knocked down by a blow from Garcia, who repeatedly struck defendant while he attempted to rise. When defendant rose to his feet, the two men briefly exchanged blows. One witness testified that at this point Jorge Madrigal approached the scene of the fight and threw two or three ashtrays towards Garcia and that thereafter all three individuals began fighting. The defendant then left the tavern.

While defendant was gone, according to one witness, Garcia picked up an empty beer bottle and Madrigal picked up a barstool and threw it at Garcia. Garcia caught the stool with both hands and threw it back at Madrigal. The stool was thrown back and forth three or four times. The stool was then cast aside and Madrigal and Garcia began punching each other again. At this point defendant came back into the room. According to Jorge Madrigal, when Garcia picked up the beer bottle he broke it and came towards Madrigal with it and when the defendant came in Garcia went toward the defendant with the bottle. According to the defendant, Garcia picked up the bottle when defendant reentered the room and came toward him with it in hand. Defendant could not recall whether or not the bottle was broken. According to another witness, as indicated above, when defendant reentered the room Garcia and Madrigal were engaged in a fist fight, the bar stool and beer bottle having been cast aside.

When defendant arrived back in the tavern, about 15-20 seconds after he had left, he carried a knife which he had obtained from his car trunk. Defendant testified that he got the knife because he was afraid that he or his friend Madrigal might be harmed. While the testimony is conflicting as to whether, upon reentering the room, defendant approached Garcia or Garcia approached defendant, shortly after defendant had entered the room he fatally stabbed Garcia with the knife. Defendant and Madrigal then left the tavern. The next morning they were apprehended when the police found them sleeping in a hearse parked near Barrientos' apartment.

We turn then to a consideration of defendant's first contention, that he was not proven guilty of voluntary manslaughter beyond a reasonable doubt. An individual commits voluntary manslaughter when he kills another, either while acting under sudden and intense passion resulting from serious provocation or while acting under an unreasonable belief that deadly force is necessary to protect himself or another from imminent death or great bodily harm. (Ill. Rev. Stat. 1973, ch. 38, par. 9—2.) Defendant contends that his conduct was neither the result of a sudden and intense passion nor based upon an unreasonable belief as required by section 9—2 of the Criminal Code. Rather, defendant

contends that the evidence in this case shows that his stabbing of Garcia was a deliberate undertaking, and justified by the defense of himself or of his roommate, Madrigal. Defendant contends that in such a situation the only possible results are either a conviction of murder or an acquittal. ■■ Whether or not a killing is justified by the defense of a person is a question of fact to be determined by the trier of fact. (*People v. Hurst* (1969), 42 Ill.2d 217, 247 N.E.2d 614.) Such determination will not be set aside unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt as to defendant's guilt. (*People v. Clemens* (1972), 9 Ill.App.3d 312, 292 N.E.2d 232.) In the present case, we believe that the jury was presented with ample evidence from which it could conclude that defendant lacked a reasonable belief that his use of deadly force on Garcia was "\* \* \* necessary to prevent *imminent* death or great bodily harm to himself or another \* \* \*." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, par. 7—1.) The right of self defense does not justify an act of retaliation or revenge. (*People v. Thornton* (1962), 26 Ill.2d 218, 186 N.E.2d 239; *People v. Hines* (1975), 31 Ill.App.3d 295, 334 N.E.2d 233; *People v. Welsch* (1969), 110 Ill.App.2d 450, 249 N.E.2d 714.) In the present case, defendant withdrew from the scene of his altercation with Garcia and obtained a deadly weapon from his car. While defendant may have been justified in the use of force to defend himself during the course of the fight, any such justification vanished when defendant made his escape. Since the jury was presented with sufficient evidence from which it could find that the defendant killed Garcia while acting under an unreasonable belief that deadly force was necessary to protect himself or another from imminent death or great bodily harm, the defendant's further contention that he should either have been convicted or acquitted of murder must also fail. It is well settled that a defendant on trial for murder may be convicted of voluntary manslaughter if the evidence adduced at trial establishes the necessary elements of the lesser offense. *People v. Crawford* (1944), 387 Ill. 616, 56 N.E.2d 805; *People v. Thompson* (1973), 11 Ill.App.3d 752, 297 N.E.2d 592.

Defendant next complains of the giving of the following instruction: "A person is not justified in the use of force if he initially provokes the use of force against himself with the intent to use that force as an excuse to inflict bodily harm upon the other person." Defendant contends that the giving of this instruction was erroneous because it was not based on the evidence, and prejudicial because it may have misled the jury. Defendant's contention in this regard is based

upon his view that all the events leading up to the killing of Garcia in the Railroad Tap constituted only one transaction in which Garcia was the aggressor.

■■ We find, however, that in this case the giving of the instruction complained of was entirely reasonable. The instruction properly informed the jury that if it found the defendant was being threatened by the victim just prior to the stabbing, that this finding would not excuse the stabbing if the jury further found defendant provoked such conduct by his reentry into the tavern with a knife.

■■ Defendant next contends that the trial court erred in allowing the State to impeach Jorge Madrigal, a defense witness, on collateral matters. It is true, as defendant points out, that a witness may not be impeached on collateral issues (*People v. Pfanschmidt* (1914), 262 Ill. 411, 104 N.E. 304), and that if a defendant is prejudiced thereby, reversible error may result. (See *People v. Fiorita* (1930), 339 Ill. 78, 170 N.E. 690.) We find, however that the impeachment of defendant's roommate, Madrigal, was not on collateral issues. While no purpose would be served in setting forth the witness' testimony and his impeachment at length, we note that the witness, on direct examination, testified in great detail as to his movements on the night in question. The impeachment in question served merely to test the credibility of this important defense witness. The trial court, therefore, properly exercised its discretion to allow the impeachment. Defendant also contends that the trial court erred in instructing the jury as to prior inconsistent statements. Since we find the impeachment of Madrigal, which included impeachment by the use of prior statements, to have been proper, we also find no error in instructing the jury that such evidence may affect the weight to be accorded the witness' testimony.

Defendant's next contention is that the trial court abused its discretion in failing to discharge or recess the jury. After deliberating for about 11 hours, the jury made a request for a clarification of an instruction. This request was denied upon agreement of the parties. Following further deliberation, the jury was given the instruction for deadlocked juries as set out in *People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601. Following further deliberation, the court, with the consent of counsel, called out the jury to inquire as to their progress. The following exchange ensued:

"THE COURT: Mr. Foreman, I take it that the jury has not reached a verdict.

THE FOREMAN: No sir, we have not.

THE COURT: Do you feel that reasonable additional deliberation would result in a verdict?

THE FOREMAN: I am afraid not.

THE COURT: Do you feel that the jury is hopelessly deadlocked?

THE FOREMAN: I think at this point we are.

THE COURT: Would the jury like to try any additional deliberation?

THE JURORS: Yes.

THE FOREMAN: They would.

THE COURT: All right. You may retire for some additional deliberation."

After about 1½ hours of further deliberation, at 3 a.m., which was some 14 hours after the jury had begun deliberations, the jury returned its guilty verdict.

Defendant concedes that the *Prim* instruction was properly given. Defendant's contention is that when the trial court "required" the jury to deliberate further after the discussion above quoted, after the jury had already deliberated for some 12 hours and after the *Prim* instruction had already been given, he coerced the jury and thereby violated defendant's right to trial by an impartial jury. We disagree with defendant's premise that the judge required further deliberations of a deadlocked jury and with defendant's conclusion that the jury was coerced.

■■ An examination of the discussion between the court and jury set out above reveals that although the foreman stated his opinion that the jury was hopelessly deadlocked, he apparently was not stating the views of other members of the jury. Additionally. while the record of that colloquy merely shows that the jury indicated that it wanted to try additional deliberations, the prosecutor stated, in reference to the incident at the hearing on post trial motions, that, "there was quite a reaction from the body of the jurors" when the foreman indicated that the jury was deadlocked. It is clear, therefore, that since the jury was not hopelessly deadlocked and had indicated a desire to deliberate further, that the court did not "require" further deliberation as defendant contends. We further find that the circumstances of this case in no way support defendant's conclusion that the jury was coerced into a verdict. Rather, the facts indicate that the trial judge properly gave the *Prim* instruction; later inquired of the jury's progress with the agreement of counsel and found that at least some members of the jury wished to deliberate further; and that thereafter the jury returned its verdict. The fact that the jurors deliberated for some 14 hours, with the exception of lunch and dinner, indicates only that they gave the facts due consideration in reaching a result. We find defendant's contention that the jurors were coerced without merit.

886

■■ Defendant's final contention is that defendant's 4- to 12-year sentence, although admittedly within the statutory limits for the offense of voluntary manslaughter, was excessive. Defendant argues that the trial court failed to give proper consideration to the presentence report and to the facts of this case. While defendant points out factors in this record in support of his contention that the sentence is excessive, we must not fail to observe, as did the trial judge, that the defendant deliberately left the tavern and obtained a knife from his car with which he unjustifiably stabbed the victim to death. We must further not fail to observe the Supreme Court's admonition that this court's authority to reduce sentences

"* * * should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals." (*People v. Taylor* (1965), 33 Ill.2d 417, 424, 211 N.E.2d 673, 677.)

We do not find the sentence imposed herein warrants the exercise of our power to reduce sentences.

Accordingly, the judgment appealed from is, in all respects, affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.