THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VINCENT THOMAS, Defendant-Appellant.

First District (2nd Division)   No. 1—87—1327

Opinion filed June 30, 1989.

Paul B. Biebel, Jr., Public Defender, of Chicago (Stephanie L. Ellbogen, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James Fitzgerald, and Judith M. Pietrucha, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

After a jury trial, defendant, Vincent Thomas, was convicted of murder for shooting and killing James Jones, and of armed violence for shooting Eric Archie. He was sentenced to consecutive terms of 28 years for murder and 10 years for armed violence in the Pontiac Correctional Center.

The State presented evidence as follows: Eric Archie testified that on April 10, 1986, the evening before the incident, he was at a grocery store with James Jones. Around 10:30 p.m., defendant walked into the store and spoke with Jones. They began to fight and defendant hit Jones in the face. Archie broke up the fight. He and Jones then left the store.

When defendant left the store, he proceeded to fight with Jones in front of the store. Archie broke up that fight.

Archie and Jones walked down the block. Defendant and Jones began to fight for a third time. Archie grabbed Jones and pulled him off defendant. Defendant got into a car and drove away.

Around 8 a.m. the following morning, Archie and Jones were standing in front of Jones' car at 101st and Princeton Streets when a car pulled up in front of Jones' car. Defendant got out on the passenger side. Jones asked defendant if he came back to finish the fight. Defendant replied: "No, I come [sic] to kill you." Jones stepped back. Defendant pulled a gun from his waist and walked toward Archie.

Defendant asked Archie where the "stuff" was. Archie replied that he did not know what defendant was talking about. Defendant swung his gun at Archie's head. The gun fired and struck Archie in the foot. Jones and Archie started to run in opposite directions.

Archie looked back and saw defendant at the entrance to an alley. Archie went to a neighbor's house to ask her to call his father. He heard two more shots being fired.

Felbert Morris testified that he drove the car used in the incident. At 8 a.m., Morris picked up defendant. Defendant asked Morris directions as they drove which did not lead to the store Morris was going to. Defendant told Morris to pull over by two men. Morris did not recognize either man.

Defendant got out of the car, said, "What are you going to do now?" and walked up to the two men. Defendant took a swing at the

taller of the two men. A shot was fired and Morris saw a gun in defendant's hand. Morris did not know defendant had a gun. He did not give defendant the gun.

The two men ran and defendant shot twice at the shorter man, who was running toward an alley. Defendant was 30 to 35 feet away from the victim when he fired the two shots.

Chicago police officer Lawrence Wronka testified that he was on duty on April 11, 1986. At 8:35 a.m., he received a call. When he arrived at 315 West 101st Street, he saw a crowd in an alley where a man was lying facedown in a pool of blood. He searched the area for weapons but did not find any.

Dr. Shaku Teas, of the Cook County medical examiner's office, testified that Jones died of a gunshot wound to the back.

Defendant testified that while he was in Morris' car, Morris pointed out the men that jumped defendant the night before. Defendant asked Morris to pull over so he could ask them why they had jumped him the night before. Morris warned defendant that Archie had had a gun the night before, but defendant said that he was not worried. Morris then told defendant to take a gun which Morris had under the driver's seat. Defendant took the gun.

Defendant walked up to Archie and Jones. Archie pulled something from his back pocket and swung at defendant. Defendant fell against the car and his gun went off. The gun was pointing down and defendant did not think the bullet hit anybody.

Defendant heard more shots coming from Jones' direction. Defendant turned and began shooting back. Defendant was not aiming, he "was just shooting." He only shot at Jones twice. He fired at Jones because he feared for his own personal safety and thought that Jones was trying to kill him.

Defendant got back in the car with Morris. Morris told him to throw the gun out the car window. Defendant got out of the car in front of his brother's house, but did not go in. He walked around for approximately 29 hours.

On re-cross-examination, he stated that during the period he walked around, he talked to his wife and unsuccessfully tried to talk to his lawyer about some personal business around 4 p.m. on the day of the incident.

Defendant was sentenced to concurrent terms of 28 years for murder and 10 years for armed violence. This appeal followed.

I

The principal assignment of error is that the defendant was de-

nied a fair trial because the jury instructions misstated the law regarding burden of proof. We agree.

After this case was tried, the Illinois Supreme court decided *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, and held that when Illinois Pattern Jury Instructions, Criminal, Nos. 7.02 (murder), 7.04 (voluntary manslaughter—provocation) and 7.06 (voluntary manslaughter—belief of justification) (2d ed. 1981) (IPI) are given together, they misstate the State's burden of proof. Those three IPI instructions were given in this case.

The supreme court held that the improper instructions constitute grave error and require reversal of the defendants' convictions even though the defendants failed to object to the instructions; to present instructions which correctly stated the law; to raise the issues in a post-trial motion; or to dispute their correctness on appeal. *Reddick*, 123 Ill. 2d at 198.

*Reddick* is fully retroactive to this case. In *People v. Brooks* (1988), 175 Ill. App. 3d 136, 529 N.E.2d 732, *appeal denied* (1989), 124 Ill. 2d 557, and in *People v. Shields* (1989), 181 Ill. App. 3d 260, 536 N.E.2d 999, this division held that this error is "incontestably of constitutional dimension, and a ruling regarding that right must be applied retroactively." (*Brooks*, 175 Ill. App. 3d at 142.) We adhere to the views we expressed in *Brooks* and *Shields*.

■ In arguing that the instruction constituted harmless error, the State cited *People v. Skipper* (1988), 177 Ill. App. 3d 684, 532 N.E.2d 44, and *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531, *appeal denied* (1988), 121 Ill. 2d 574. In *Skipper* and *Carter*, the defendants did not present enough evidence to justify instructions on voluntary manslaughter. (*Carter*, 177 Ill. App. 3d at 598-600; *Skipper*, 177 Ill. App. 3d at 689-90.) However, here, defendant testified that he heard shots coming from Jones' direction. This was enough evidence to allow the jury to consider the voluntary manslaughter instructions. (See *People v. Dortch* (1974), 20 Ill. App. 3d 911, 314 N.E.2d 324, *appeal denied* (1974), 56 Ill. 2d 588; *People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913, *cert. denied* (1984), 465 U.S. 1032, 79 L. Ed. 2d 698, 104 S. Ct. 1298.) Obviously, the State agrees that the defense in the case at bar presented sufficient evidence because the voluntary manslaughter instructions were tendered by the State. Therefore, this cause is reversed and remanded for a new trial.

## II

We will discuss other assignments of error, because the questions may recur in another trial. Defendant initially contends that the pros-

ecutor's comments during closing arguments deprived him of a fair trial.

■■ Reversible error exists where there are reasonable grounds for believing the jury was prejudiced by improper remarks. (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818.) Where, as here, numerous comments are made, it is unnecessary to assess the effect of each isolated comment. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629, *cert. denied* (1982), 459 U.S. 830, 74 L. Ed. 2d 68, 103 S. Ct. 68.) Improper remarks do not constitute reversible error unless they result in substantial prejudice to the accused. *People v. Tiller* (1982), 94 Ill. 2d 303, 321, 447 N.E.2d 174, *cert. denied* (1983), 461 U.S. 944, 77 L. Ed. 2d 1302, 103 S. Ct. 2121.

During both opening and rebuttal closing arguments, the jury heard two different prosecutors comment on defendant's phone call to his attorney on the day of the incident. During closing argument, the prosecutor also commented on recent teen suicides. The defendant objected. The court said that the prosecutor "should not ask the jurors to put themselves in the place of anybody on either side, but he may certainly comment on the fearless enforcement of the law and the evil alleged in this charge." In closing, the prosecutor also inferred defendant was lying and the judge knew defendant was lying and could not do anything about it.

■■ When all of the allegedly improper remarks are read together, they cannot be said to have constituted a material factor in defendant's conviction or to have substantially prejudiced defendant's right to a fair trial.

### III

Defendant also argues that the trial court erred in refusing to submit instructions on the offense of involuntary murder to the jury. During the instructions conference, defense counsel requested an instruction on involuntary manslaughter for the shooting of Jones. The trial judge refused.

■■ It is reversible error for the trial court not to give a manslaughter instruction in a murder trial if there is evidence which would permit a jury finding of guilty of manslaughter rather than murder. See *People v. Canada* (1962), 26 Ill. 2d 491, 187 N.E.2d 243.

■■ Even though defendant tendered the jury instruction and the trial court refused to submit it, this issue has not been included in defendant's written post-trial motion. This failure constitutes a waiver of the issue and it cannot be urged as a ground for reversal on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124,

*cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) This alleged error does not rise to the level of plain error. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

Recklessness is an indispensable element of involuntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a); *People v. Frank* (1981), 98 Ill. App. 3d 388, 397, 424 N.E.2d 799, *appeal denied* (1981), 85 Ill. 2d 579, *cert. denied* (1982), 456 U.S. 927, 72 L. Ed. 2d 442, 102 S. Ct. 1973.) The record is devoid of any reckless conduct by defendant. All of his acts indicate an intentional action without which Jones would not have died. Defendant never denied an intention to kill Jones.

■ Defendant is entitled to an instruction upon "very slight evidence." (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 931, 450 N.E.2d 913, *appeal denied* (1983), 96 Ill. 2d 542, *cert. denied* (1984), 465 U.S. 1032, 79 L. Ed. 2d 698, 104 S. Ct. 1298.) Since there was no credible evidence in the record which would have reduced defendant's crime to involuntary manslaughter, the trial court did not err in refusing to give defendant's tendered instruction. *People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.

### IV

Defendant next argues that the trial court impermissibly hastened the jury's verdict.

The jury began their deliberation at 3:17 p.m. on March 19, 1987. Around 7:30 p.m., the court received two notes from the jury. They read: "Can we still order dinner?" and "[W]e can not reach a decision on Jones but have reached a decision on Archie." The jury was brought back into the courtroom. Defendant was found guilty of aggravated battery and armed violence. The trial court accepted the verdicts, told the jury to keep deliberating, and gave a *Prim* instruction. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2371.) The trial court told the jury that it was too late to order dinner. If they were unable to reach a verdict, the judge said that he would arrange for them to spend the night and possibly get dinner. At 8:05 p.m., the jury returned a verdict of murder for the shooting of Jones.

■ In determining whether the judge's comments coerced a jury into hastening a verdict, the totality of the circumstances must be examined—whether the language used actually coerced or interfered with the deliberations of the jury and prejudiced the defendant. (*Prim*, 53 Ill. 2d 62.) A verdict hastened by the action of a judge, however worthy the motive, cannot be the result of the deliberation

guaranteed by the law. *People v. Golub* (1929), 333 Ill. 554, 561, 165 N.E. 196.

Informing a jury that they will be sequestered after a certain time cannot necessarily be considered coercive. (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913, *appeal denied* (1983), 96 Ill. 2d 542, *cert. denied* (1984), 465 U.S. 1032, 79 L. Ed. 2d 698, 104 S. Ct. 1298.) Notably brief deliberations, however, invite an inference that the court's remarks were the primary factor in the procurement of the verdict. *People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d 868, *appeal denied* (1984), 101 Ill. 2d 568.

■■ Defendant has waived this issue by failing to object at trial or raise this issue in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) This alleged error does not rise to the level of plain error. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

Additionally, the cases cited by defendant are readily distinguishable from this case. *People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d 868, *appeal denied* (1984), 101 Ill. 2d 568, was a deadlock situation. The trial court singled out, in the presence of the entire jury, the one juror who refused to vote guilty because he did not want anyone to go to jail. The judge then gave an incomplete deadlock instruction. The appellate court found these to be so prejudicial as to require reversal. (*Branch*, 123 Ill. App. 3d at 250-54.) The appellate court focused on the comments to the deadlocked jury. It noted that while the length of subsequent deliberations, by itself, is not conclusive, the "somewhat unique" facts of that case warranted reversal. *Branch*, 123 Ill. App. 3d at 250-51, 252.

*People v. Friedman* (1986), 144 Ill. App. 3d 895, 494 N.E.2d 706, was not a deadlock situation. The trial court briefly mentioned sequestration after orally clarifying an instruction at the jury's request. The appellate court, while citing *Branch*, merely looked at the time element and ignored its own mention of the general rule that informing a jury of sequestration cannot be considered coercive. (*Friedman*, 144 Ill. App. 3d at 903.) Arguably the clarification could have merely served to affirm the jury's verdict, which would explain the short subsequent deliberation. Thus, *Friedman* totally ignored its reasoning and should be considered an anomaly. Additionally, *Friedman* was also reversed because of improper jury instructions.

■■ Here, the court's comment was not meant to coerce a verdict or interfere in deliberations. If the jury was coerced or so hungry or tired as defendant suggests, why did it take them 35 minutes to re-

turn a verdict when they could have done it in a few minutes? Since the *Prim* instruction was given, 35 minutes is a sufficient time for the jury to reevaluate their views without being influenced by the court's comments about dinner or sequestration.

## V

At the sentencing hearing, Jones' father testified about the impact that his son's death had on himself, his wife and three daughters. Defendant contends that this violated *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529.

■■ Defendant waived this issue by failing to object to the testimony at trial or to raise it in a post-trial motion. The admissibility of victim impact evidence in noncapital cases is governed by statute. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—4—1(a)(6), 1406.) Thus, it appears that defendant is attacking the constitutionality of these provisions. Where issues collateral to the validity of the statute under which defendant was charged are involved, failure to object at trial waives those issues even though they arise out of constitutional violations. *People v. Graves* (1974), 23 Ill. App. 3d 762, 320 N.E.2d 95.

■■ *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, by its own terms is limited to capital cases. The statutory scheme which allows for victim impact evidence in noncapital cases is not subject to challenge under *Booth's* eighth amendment analysis. *People v. Turner* (1989), 128 Ill. 2d 540.

Accordingly, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SCARIANO and DiVITO, JJ., concur.