THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFERY HANKS, Defendant-Appellant.

Fifth District    No. 5—88—0090

Opinion filed March 13, 1991.

GOLDENHERSH, J., concurring in part and dissenting in part.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Rob Roth, State's Attorney, of Albion (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Defendant, Jeffery Hanks, was charged in the circuit court of Edwards County with theft over $300. Believing that a witness for the State would be unavailable to testify at trial, defendant made a pretrial request to depose Gary Thompson, who was living in Georgia, but this request was denied. After a trial by jury, Hanks was found guilty and sentenced to three years' imprisonment.

At trial, Nadine Wolfe testified that she owned and operated Sabre Construction Company. On the morning of March 19, 1987, she discovered that the company office had been burglarized and numerous items had been stolen, including 40 $1,000 United States savings bonds.

Gary Thompson, Hanks' brother-in-law, who was serving a sentence in the Atlanta penitentiary at the time of trial, testified that around the first of April, 1987, he saw Hanks and John Banks at his house in Florida. They showed Thompson a group of savings bonds and told him they had obtained them from someone who had been arrested for burglary. They gave the bonds to Thompson to sell, agreeing to split the proceeds. When Hanks and Banks called Thompson

sometime later to inquire about the bonds, Thompson told them he had been unable to sell them so he had burned them.

Paul Menninger, a Secret Service agent, testified that he interviewed Hanks and Banks, that they admitted possession of the bonds, and that they had given the bonds to Thompson.

John Banks testified that he found the bonds in a bag by the front gate of his trailer. He did not look to see what was in the bag, but simply tossed it into his car. Later, while in Florida, Thompson discovered the bonds and suggested selling them. Banks replied that he wanted nothing to do with them, and Thompson allegedly replied, "You're right. I need to burn them." After returning to Illinois and learning of the burglary, Banks called Thompson to get the bonds back, but Thompson told him that he had burned them.

Hanks' testimony corroborated Banks' testimony.

During a break in the trial, Thompson told defense counsel that he had attempted to sell the bonds to Federal agents and they had audiotaped his conversation with them. Defense counsel requested that these tapes be made available as they might contain information with which he could impeach Thompson, but the court responded that the prosecution was not responsible for providing these tapes because the prosecution had not been told of their existence, and that defendant failed to show how the tapes would be beneficial to him.

The jury began deliberations at approximately 11 a.m. and continued throughout the day. At 9 p.m. the court gave the jury a *Prim* instruction. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) The foreman responded that the jury was deadlocked on one issue, would like to go home, and start over the next day. The court replied:

> "Why don't you go back in the jury room, have your sandwiches, refresh yourselves a bit, and try to deliberate a little further, and if you feel that you're unable to reach a decision yet tonight, then let me know with a note under the door, or within a reasonable time I'll be getting back with you and ask where you're standing at that point."

At 10 p.m., the court inquired if a verdict was possible, and the foreman stated that they were going back over the facts and there was a "slight possibility" of a verdict that night. The court then stated:

> "Well, perhaps I should advise you of something. If we break for the evening, there is a rule in criminal cases, such as this case, that the jury has to be kept, as I say, sequestered, during the night, which means that we would have to probably house you at a hotel. Hopefully, they would still have room at Windsor Oaks, in Grayville. We would have to transport you there

and bring you back tomorrow to resume your deliberations, if you wanted to break before reaching a verdict. So, with that understanding, would you like to continue to work yet tonight, or do you think that you've worked as much as you can work and want to go to a hotel and come back in the morning?''

The foreman responded that the jury would continue to deliberate, and the court told the foreman that if he felt the jury could still reach a verdict that night, it could continue to deliberate. A guilty verdict was returned 45 minutes later.

On appeal, Hanks argues that he was denied a fair trial as a result of the trial court's refusal to order the disclosure of the tape of Thompson's conversations with the Secret Service agents. The trial court ruled that the prosecutor had complied with Supreme Court Rules 412(a)(i) and (g) by using due diligence in attempting to obtain these statements by requesting the release of the reports of the investigating officers. The court also ruled that the materials in the hands of the Secret Service should have been provided pursuant to the requests made by the prosecutor and that the defendant had failed to show why the statements would be advantageous to the defense.

■ Under Supreme Court Rule 412(f), the State has a duty to "ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged." (134 Ill. 2d R. 412(f).) The rule does not specify what "investigative personnel" it covers or what persons whose possession and control of material and information must be imputed to the State.

■ In *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38, our supreme court held that Alabama law enforcement officials were not agents of the State whose possession and control of information could be imputed to the prosecutor's office. The court found support for this conclusion in Rule 412(g), which provides that the trial court shall mandate that discoverable material be made available to the defense by subpoena or court order where the State's diligent good-faith efforts to procure such information had been unsuccessful and "such material or other governmental personnel are subject to the jurisdiction of the court." Because Alabama law enforcement officials were not subject to the jurisdiction of Illinois courts, the court reasoned, the State had no obligation under Rule 412 to procure the material in question.

Unlike *Thompkins*, we are not dealing with law enforcement officials in a sister jurisdiction, who are clearly not subject to the jurisdic-

tion of Illinois courts, but with a Federal agency that operates nationwide. Defendant cites several cases which he contends hold that Federal agencies are an arm of the State for purposes of Rule 412. In *People v. Sumner* (1966), 72 Ill. App. 2d 258, 218 N.E.2d 236, the Federal Bureau of Investigation interviewed two prosecution witnesses. Despite a request by the defendant, the State's Attorney refused to disclose whether he had copies of the reports and no effort was made to obtain them from the Bureau. The cause was remanded to the trial court with directions to conduct an inquiry into the existence, availability, proper producibility, and relevancy of the statements in question. The court did not address the applicability of Rule 412 to Federal agencies. In *People v. Rose* (1978), 65 Ill. App. 3d 264, 381 N.E.2d 1215, the trial court refused to require the State to disclose to the defendant statements given to the FBI by two accomplice witnesses. On appeal, the court remanded the cause and instructed the trial court to conduct a hearing to determine whether the statements in question were in existence and subject to production. Again, the court did not specifically determine whether Rule 412 applied to the FBI. Further, in contrast to these cases, the State's Attorney in the present case clearly made an effort to obtain the material in the possession of the Secret Service. He contacted the local agent in Mt. Vernon and requested "copies of any and all reports that you have regarding this matter," as well as a list of all witnesses and agents. When the agent failed to respond, the State's Attorney contacted the agent's superior in Springfield. While he did not specifically ask for "tapes," there is no indication that he knew of the tape's existence. He also issued a subpoena *duces tecum* for "all reports and original bonds." This could hardly be considered less than due diligence.

　■ Hanks argues that Federal agents in both Florida and Georgia are subject to subpoena power of Illinois courts by virtue of the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (the Act) (Ill. Rev. Stat. 1987, ch. 38, par. 156—1 *et seq.*). Section 3 of the Act provides that if a person in another State which has adopted the Act is a material witness in a prosecution pending in a court in this State, a judge of such court may issue a certificate under the seal of the court stating such and specifying the number of days the witness will be required. This certificate is then presented to a judge at a court of record in the county where the witness is found. The Act has been adopted by every State in the union. Under Hanks' argument, the State would be responsible pursuant to Rule 412(f) for maintaining a flow of information between the prosecutor's office and all Federal investigative

agencies nationwide. We find it difficult to believe such was the legislature's intent in adopting the Act, and Hanks cites no authority otherwise. Under such interpretation, the Alabama law enforcement officials in *Thompkins* would have been agents of the State. We hold that the Act does not operate to extend to the State's obligations under Rule 412.

■ Given our supreme court's rationale in *Thompkins*, we are persuaded that the State had no duty under Rule 412 to procure the tape of Thompson's conversations with the Secret Service agents. The tape was in the possession of agents in either Florida or Georgia (the record is not clear on this), clearly beyond the jurisdiction of Illinois courts. Whether Rule 412 applies to material in the possession of Federal agencies within Illinois is not before us and therefore we need not address that issue.

■ Hanks also argues that the jury's verdict was the result of fatigue brought on by the long hours of deliberation and the trial court's indication to the jury that it would be sequestered for the night if a verdict could not be reached. The length of time a jury is permitted to deliberate is left to the discretion of the trial court. (*People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170.) Lengthy deliberations, far from indicating that the jury was coerced, indicate that careful consideration was given to all the evidence. (*People v. Munguia* (1975), 33 Ill. App. 3d 880, 338 N.E.2d 574.) Regarding the court's reference to sequestration, it has been held that merely informing a jury that it might be sequestered is not *per se* coercive. (*People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913, *appeal denied* (1983), 96 Ill. 2d 542.) Extremely brief deliberations after a reference to sequestration, however, lead to an inference that the reference to sequestration coerced the jury into rendering a verdict. (*People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d 868.) In determining whether a reference to sequestration is coercive, the totality of the circumstances must be considered to determine whether the language used actually interfered with the jury's deliberations or coerced a verdict to the prejudice of the defendant. (*People v. Thomas* (1989), 185 Ill. App. 3d 1050, 542 N.E.2d 100.) Based upon a careful review of the dialog between the court and the foreman, and the actual language the court employed, we find that the instruction to continue deliberations and reference to sequestration was simple, neutral and not coercive. (*People v. Campbell* (1987), 163 Ill. App. 3d 1023, 516 N.E.2d 1364; *cf. People v. Ferro* (1990), 195 Ill. App. 3d 282, 551 N.E.2d 1378.) Likewise, the length of time the jury deliberated after the reference to sequestration demonstrates that such reference did

not influence the verdict. In *Thomas*, the jury returned a guilty verdict 35 minutes after the court's reference to sequestration. The court held that 35 minutes was a sufficient time for the jury to reevaluate its views without being influenced by the court's comments. The defendant relies on *People v. Friedman* (1986), 144 Ill. App. 3d 895, 494 N.E.2d 760, and *People v. Branch* (1984), 123 Ill. App. 3d 245, 462 N.E.2d 868, both of which are readily distinguishable. In *Branch*, the court singled out, in the presence of his fellow jurors, the one juror who would not vote guilty and then gave an incomplete *Prim* instruction. A guilty verdict was returned 10 minutes later. In *Friedman*, the verdict was returned five minutes after the court indicated that the jury would be sequestered. In both cases, the reference to sequestration clearly influenced the verdict. We believe the jurors in the present case had sufficient time to reevaluate their views and were not influenced by the court's reference to sequestration.

For the foregoing reasons, the judgment of the circuit court of Edwards County is affirmed.

Affirmed.

HARRISON, J., concurs.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I agree with my colleagues that the trial court in this instance properly handled the question of the jury deliberation and its resultant verdict. I also agree with the majority's determination on the questions of discovery, or lack of it, and the trial court's conclusion that the prosecutor had complied with Supreme Court Rule 412 by using due diligence in attempting to obtain these statements. The actions of the State's Attorney in attempting to obtain this discovery, in my opinion, were fully in compliance with the letter and the spirit of Rule 412, and are commendable and should be used as an example to other similarly placed State's Attorneys. I also agree with the majority in its construction of *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 48.

This leaves us with a problem, however, which is basic to our system of justice. Given the State's attempt to comply with the applicable discovery rules and the Federal government's refusal to cooperate with our State's authorities in discharging their discovery duties, has defendant been deprived of a basic fundamental right, the right to a

fair trial? On the basis of the record before us, this court is not able to say.

An analogous situation occurred in *People v. Sumner* (1966), 72 Ill. App. 2d 258, 218 N.E.2d 236. The court in *Sumner* noted the crucial part in a trial that able cross-examination played, and quoted Mr. Justice Brennan in *Jencks v. United States* (1957), 353 U.S. 657, 1 L. Ed. 2d 1103, 77 S. Ct. 1007, as follows:

> "Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony." (353 U.S. at 667, 1 L. Ed. 2d at 1111, 77 S. Ct. at 1013.)

In *Sumner*, the cause was remanded to the trial court with directions to conduct an inquiry as noted in the majority opinion, into the "existence, availability, proper producibility, and relevancy of the statements in question."

The attempt by the State's Attorney to comply with our discovery rules is exemplary. The trial court correctly noted the State's attempted compliance with discovery and in all other respects handled this case in a commendable manner. We should not stop our inquiry short, however, and must consider the vital question whether a Federal agency's indifference to a valid request for discoverable materials has resulted in this defendant being denied a basic fundamental right, his right to a fair trial. Such a basic constitutional right should not be held hostage to the indifference of a governmental agency over which this State has no control. Such a cavalier attitude toward fundamental rights is unbecoming to any governmental agency, and we should not compound the effects of such indifference by refusing to deal with its consequences.

I would therefore remand this cause to the trial court with specific directions to conduct an inquiry as to the effect, if any, of the refusal of this Federal agency to cooperate in the reasonable requests of the State's Attorney and forward this discoverable material on defendant's right to a fair trial.