THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JIMMIE
NEILSON HORNBUCKLE, Defendant-Appellant.

(No. 70-57;

Third District—September 7, 1972.

James Geis, of Defender Project, of Ottawa, for appellant.

Patrick McNamara, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Appellant Jimmie Neilson Hornbuckle was convicted of the crime of attempted rape on March 6, 1970, in a jury trial. At the time of his arrest on such charge, Hornbuckle was on parole on a prior armed robbery conviction. He was sentenced by the trial court to serve concurrent terms (as to the armed robbery conviction and as to the conviction for attempted rape) of not less than five nor more than seven years in the penitentiary.

Defendant-appellant raises two issues on appeal, (1) that he was not proven guilty beyond a reasonable doubt and (2) that the sentence imposed on him was excessive and contrary to the concept of indeterminate sentencing required by statute. He contends that the conviction of attempted rape requires proof beyond a reasonable doubt that he had the specific intent to have intercourse with the complaining witness whom he allegedly assaulted, and that not only was such intent not proven beyond a reasonable doubt, but his identity as the assailant was not established beyond a reasonable doubt.

The complaining witness testified that she went to a public park with three of her own and four neighbor children. She was wearing a pair of underpants, a swimsuit, bermuda shorts, and a top to match the shorts. While she was in a museum at the park she stated she "noticed a man was walking around". She particularly noted his sunglasses. After she left the museum and proceeded with the children to a nature trial at the park, she again saw the man. She walked to an exhibit and was reading it when she felt an arm around her neck and waist. She was knocked to the ground. She then observed the man coming toward her and she arose and again felt an arm chocking her hard about the neck. The man pulled at her halter and ripped it. He told her, "Let me see what you have * * * everything will be all right". She fell to the ground again and the assailant got over her and pulled outward on the waist of her shorts. She was struggling with the assailant but was able to get up. He put his hands on her breasts. He told her to "shut up" and then slapped her face. At the time of the attack all of the children were within a distance

of 15 to 20 feet of the complaining witness. The attacker did not attempt to take complainant's purse. Two of her children pounded on the assailant's back. Her daughter knocked the assailant's glasses off. During all this time the complainant states that the assailant was wearing an orange shirt and green pants. The top of his head was bald but he had long sideburns. The man ran away.

While the complaining witness was still in the park she estimated the attacker's height to be 5'9" or more and his age to be about 40 or 45. One of the neighbor children who was with the complaining witness (a sixth grade student) stated he had seen the assailant earlier in the museum. According to this child, the assailant's orange shirt had a white trim. He was wearing sunglasses and green pants and was bald and had long sideburns. As this child was accompanying the complaining witness to her car after the attack, he said he saw the assailant, wearing an orange shirt, driving in a greenish-blue Mercury automobile. About 10 to 15 minute later he saw the automobile again. The driver's orange shirt attracted his attention. When the car passed the second time, "the man put up his hand and started going real fast". He had long sideburns and was partially bald. He was identified by the child as the assailant. The child noted the automobile license number.

■■ After the police traced the automobile license number to Hornbuckle, they arrested him. Prior to his arrest, the complaining witness identified Hornbuckle from photographs which the police submitted to her. She identified him again in court. Appellant contends that the photographs which were submitted to complaining witness were so suggestive that his conviction should not be allowed to be based upon her identification which, in turn, was based on the photographs. He contends that the photograph of him was the only photograph that even resembled the description that complainant gave to police. We note, however, that the complaining witness's identification in court of the defendant as the assailant was based independently upon the complaining witness's observation of the assailant during the attack. On the basis of the record it is apparent that the in-court identification was not the product of suggestion by the police or from the photograph. *People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720.

Hornbuckle testified in his own defense that he was not in the park until approximately an hour after the attack allegedly took place and that at the time of the attack he was wearing a white T-shirt and cream colored trousers. He had tattoos on his arms. He was 34 years of age, 6' 1½" tall, and weighed 180 lbs. Several men corroborated the testimony of Hornbuckle that they were with the appellant at the tavern at approximately the time the attack allegedly took place.

■■■ On the basis of the record, the jury had the right to believe or not to believe the alibi presented by defendant Hornbuckle through his testimony and that of his corroborating witnesses. The jury obviously did not believe the alibi. On the basis of the record there was nothing inherent in the alibi evidence, of the testimony of defendant Hornbuckle and his witnesses, which would make the jury's refusal to believe such alibi unreasonable or untenable. Positive evidence on behalf of the prosecution that the defendant Hornbuckle was the assailant, if believed by the jury, was sufficient to sustain the jury verdict. We would not be justified in determining that the jury verdict was so palpably contrary to the evidence or was so unsatisfactory as to indicate that defendant could not have been proven guilty beyond a reasonable doubt on the basis of such evidence. (*People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840, *cert.* denied 402 U.S. 972.) As indicated in the *Hairston* case, if witnesses are positive and credible it is sufficient to convict, and this is so even though such testimony is contradicted by the accused.

The remaining question for consideration is whether, as a matter of law, if defendant Hornbuckle committed the acts described by the complaining witness, he could have been properly convicted of the crime of attempted rape. Under section 11—1 of chapter 38 of 1971 Ill. Rev. Stat., it is specifically provided that "a male person of the age of 14 years and upward who has sexual intercourse with a female not his wife, by force and against her will, commits rape." In section 8—4 of said chapter 38 it is specified that a person "commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense".

■■ We have noted that the assailant had ripped away the victim's halter and, while he was over her, was pulling at her shorts. If the assailant possessed the requisite specific intent to have sexual intercourse, the act, in view of complainant's struggle would obviously have been by force and against her will. The very acts to which we have referred, we believe constituted the requisite "substantial step" toward commission of the offense of rape. The ripping of the halter, together with the assailant's attempt to remove complainant's shorts, indicated that the assailant was intent upon disrobing his victim. The circumstance that the attack took place in a public park in the middle of the afternoon and in the presence of seven children, does not negative the probability that the assailant could have intended to have intercourse with his victim. After the assailant had made an obvious sexual advance upon his victim's upper torso, he had thrown her to the ground, placed himself over her, and attempted to remove her shorts. The assailant was prevented from achieving his objective. On the basis of such evidence

we believe that the jury could reasonably infer that the assailant had the specific intent referred to and accordingly we believe that, on the record, the jury's verdict should stand.

■■■ The remaining question before us is whether the sentence imposed on defendant Hornbuckle should be reduced. Under the provisions of section 8—4 of chapter 38 of 1971 Illinois Revised Statutes, a person convicted of an attempt may be imprisoned not to exceed the maximum provided for the offense attempted. The maximum sentence for rape is indeterminate. (1971 Ill. Rev. Stat., ch. 38, sec. 11—1.) Although the minimum sentence for rape is four years, no minimum sentence is prescribed for the "attempt". While the sentence which was imposed was nominally consistent with the governing statute, we believe that the minimum sentence was too lengthy when viewed in the light of defendant Hornbuckle's background and the possibility of his rehabilitation. When appellant was arrested in this case he was on parole for an armed robbery conviction. The armed robbery however, occurred in a 1956 poolroom fight when appellant struck a man with a bottle and took $11 (of which, he claimed, the man had cheated him). Appellant received a sentence of 20 years to life for this offense and he actually served 11 years and 3 months of that sentence. The appellant's parole officer testified at the hearing in mitigation and aggravation in the case at bar, that the defendant was a model parolee. When he was arrested in the present case, appellant had a steady girlfriend. While he was awaiting trial he refused to join in a jail escape in which other prisoners participated. He apparently had an excellent employment record. He had spent his youth in orphanages and foster homes and completed 3 years of high school and entered military service at the age of 17. During his prior imprisonment he had accumulated two years of college credits, and he qualified as an assistant anesthesiologist and surgical assistant, and, as an apprentice barber. The probation officer recommended that appellant be placed on probation. In light of such record, we conclude that, while the conviction must be affirmed, under the authority granted us by the statute, (1971 Ill. Rev. Stat., ch. 110A, sec. 615), the minimum term of imprisonment should be reduced to 2½ years. The judgment of the Circuit Court of Will County in this cause, is therefore, modified to reduce the sentence of defendant Jimmie Neilson Hornbuckle to a term of not less than 2½ nor more than 7 years in the penitentiary and as so modified, the judgment is affirmed.

Judgment modified and affirmed.

STOUDER, P. J., and SCOTT, J., concur.