THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY RUSH, Defendant-Appellant.

First District (6th Division)   No. 1—87—3184

Opinion filed October 16, 1992.—Modified on denial of
rehearing January 8, 1993.

Randolph N. Stone, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee G. Goldfarb and Jane E. Loeb, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM: Defendant was found guilty of aggravated criminal sexual assault and aggravated kidnapping for attacking a woman outside a bar. The trial judge denied defendant's post-trial motion for a new trial and sentenced defendant to an extended term of 55 years on the aggravated criminal sexual assault, merging the sentence for the aggravated kidnapping conviction into the same 55-year sentence.

Defendant appeals and raises as issues: whether the aggravated criminal sexual assault statute is unconstitutional; whether the jury was improperly instructed; whether the State made improper remarks in closing arguments; and whether his sentence was excessive.

At trial, the victim, D.L., testified that at about 10:30 p.m. on January 25, 1987, she, her roommate, Marsha Stewart, and a friend, Bonnie Nash, went to a neighborhood lounge at 624 East 47th Street for a birthday party. She testified that defendant joined the group at the table and bought some drinks for those present. She testified that defendant danced with her and with Nash. When the bar closed at 2 a.m., she left alone to go to a 4 a.m. bar down the street. She denied that defendant said he would go with her. The victim testified that she had taken three steps outside the door when defendant grabbed her right arm from behind and told her she was going to have sex with him. She testified that defendant hit her in the face with his fist five or six times and he continued to beat her when she fell to the ground. She testified that she fought back, refusing to go with him, but he dragged her into an alley next to a vacant lot and forced her into the basement of an abandoned building. The victim testified that he sexually assaulted her but fled out a stairwell when he saw a light

and heard a car passing by. She testified that Nash came to her and she told Nash that defendant had raped and beaten her.

Nash testified she left the lounge one or two minutes after the victim. She heard screaming and saw a number of people outside the lounge. She then saw the victim on the ground and defendant lying on top of her, beating her with his fists. The victim was yelling, "Somebody help me, help me." Nash ran back to the lounge and used the phone to dial 911 but could not get through. She testified that she then ran to the street, screaming and asking people in cars to help. She testified that a police car came by and stopped and she told the officer inside that the defendant had taken the victim and "might kill her." The officer radioed for assistance, and the two drove to the area Nash indicated. Nash testified that when the officer heard a call for help from an abandoned building, he got out of the car and proceeded toward the building on foot. She testified that a second officer pulled up and joined him in the alley behind East 47th Street, searching the alley with flashlights. As they flashed their lights into the basement stairwell, she saw the defendant run out. She testified that the officer told defendant to freeze but when defendant stopped he put his hand near his pocket. She testified that the officer fired at defendant, and defendant continued to run with the officer in pursuit. She testified that she and another officer went into the stairwell to help the victim. She found the victim with clothing torn. She was crying, beaten and bloody all over the face. The victim told her the defendant had beaten and raped her. Nash helped the victim out of the stairwell and into a police car. Nash went with the victim to Michael Reese Hospital, where her injuries worsened, and she "couldn't hardly walk." Nash stayed with the victim at the hospital that night and the next day.

Chicago police officer Charles Johnson testified that he was patrolling the area east of 47th Street at about 2 a.m. on January 26, 1987, when he was flagged down by Nash. He radioed for police assistance and, with Nash in the car, he circled the area until he heard a call for help from a building at 4640 South Champlain. Johnson testified that he exited his patrol car and, joined by Sergeant James Turney, they proceeded to the building on foot with flashlights. Johnson testified that they found the victim and defendant in a stairwell and that Turney shot at defendant when he fled. While Turney went into the stairwell to assist the victim, Johnson chased defendant through an alley and a yard but lost sight of him. As defendant fled the area, other officers arrived and together with Johnson they followed fresh footprints in the snow that led to an abandoned building in the vicinity of St. Lawrence Street, about two blocks away. Johnson, Officer

Carl Stoll and another officer entered the building and in a bedroom closet of the basement apartment, Stoll found defendant crouched under a sheet. Defendant was bleeding from the left foot and was shoeless on the right foot. Johnson read defendant his *Miranda* rights and placed him under arrest. Johnson testified that he then returned to the crime scene and found the victim. He observed that she had bruises, lacerations and blood on her face and had been drinking.

Chicago Sergeant James Turney testified that he responded to Johnson's radio call for assistance and joined him in a foot search with flashlights in the alley area behind East 47th Street. He testified that as he flashed his light into the basement stairwell of an abandoned building defendant ran out of the stairwell. Turney yelled for defendant to stop. Turney testified that after defendant ran for 5 or 10 yards, the defendant turned toward him and made a motion at his waistband. Turney fired one shot at the defendant's lower extremity because he thought defendant was pulling out a weapon. In the stairwell, Turney discovered the victim, naked except for some torn garments and kneeling and with her hands on the ground trying to get up. He testified that a friend of the victim's got out of Johnson's police car and the two assisted the victim.

Officer Carl S. Stoll testified that he and partner Erbacher responded to Johnson's call for assistance that evening. He testified that the three chased defendant for two blocks, tracking him by his bloody footprints in the snow. They followed him to the back of a vacant building in the vicinity of St. Lawrence Street. Stoll testified that when he moved into one of the bedrooms and looked into the closet area he saw dirty sheets "moving" at the rear of the closet. He testified that Erbacher pulled off the sheet and the three found defendant in a crouched position. He observed that defendant had been shot in the left foot and his right foot was shoeless. Johnson read defendant his *Miranda* rights and placed him under arrest. As they exited the building, Stoll observed defendant's right shoe in the snow outside the building. Stoll testified that he and Erbacher then took defendant to Provident Hospital. Stoll identified defendant and both his shoes at trial.

Maria Stewart, the victim's roommate, testified to the victim's presence in the lounge earlier in the evening and to the physical condition of the victim's face before and after the assault.

Dr. Michelle Armendia treated the victim in the emergency room of Michael Reese Hospital for facial abrasions and lacerations. She conducted a general physical examination but did not conduct a gynecological examination because another physician performed that exam

when she was not present. She testified that the victim's chart contained a notation that the victim had a history of drug use.

The State rested. Defendant's motion for directed verdict was denied. The defense called no witnesses.

Defense counsel offered by stipulation that Detective Valeslac would testify that his notes showed the victim told him defendant had bought her four rum and Coke drinks and that he noted in his report that the victim was wearing "no bra." It was further stipulated that Officer Johnson would testify that the victim told him that while inside the bar the defendant said he would walk with her to Grady's Lounge. The defense rested.

Following closing arguments, the jury found defendant guilty of aggravated criminal sexual assault and aggravated kidnapping. The trial court sentenced defendant to 55 years in prison for the aggravated criminal sexual assault. The trial judge stated that he believed the aggravated kidnapping conviction "merged" with the aggravated criminal sexual assault and therefore did not sentence defendant on the aggravated kidnapping conviction. Defendant's motion for a new trial was denied and defendant appealed.

Initially we consider defendant's challenge to the constitutionality of the aggravated criminal sexual assault statute. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14.) Defendant contends he was denied due process because aggravated criminal sexual assault requires no proof of a mental state while the lesser offense of criminal sexual abuse, a Class 2 felony, does. Secondly, defendant contends the aggravated criminal sexual assault statute is overbroad because it fails to limit the scope of the underlying offense to those acts done solely for the purpose of the sexual gratification of the accused or the arousal of the victim.

■ These precise arguments were rejected by the Illinois Supreme Court in *People v. Terrell* (1989), 132 Ill. 2d 178, 207-11, 547 N.E.2d 145, where the court upheld the reasoning in *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 223-24, 497 N.E.2d 1212 (a mental state of either intent, knowledge, or recklessness will be implied), and *People v. Haywood* (1987), 118 Ill. 2d 263, 275-77, 515 N.E.2d 45 (trial court erred in finding statute unconstitutionally vague and indefinite).

In the same vein, defendant contends that the jury was improperly instructed regarding the necessary elements of an aggravated criminal sexual assault conviction because the jury instruction failed to include a mental state. Because mental state is implied, however, the courts have consistently held that it is not error to omit the implied mental state from the jury instructions. *People v. Smith* (1991),

209 Ill. App. 3d 1043, 1061, 568 N.E.2d 482; *People v. Williams* (1989), 191 Ill. App. 3d 269, 275, 547 N.E.2d 608.

Therefore, we reject defendant's contention that the statute is unconstitutional and that the jury was subsequently improperly instructed.

Defendant also challenges two other aspects of the jury instructions: (1) that the jury was improperly instructed on the elements of aggravated kidnapping because the instructions failed to contain the essential element of "intent to secretly confine"; and (2) that the instructions for aggravated kidnapping alleged the commission of an underlying felony not charged in the indictment.

Generally an error in jury instructions is waived if defendant fails to object at trial, offers no alternate instructions and/or fails to raise the issue in post-trial motions. (*People v. Shields* (1991), 143 Ill. 2d 435, 446, 575 N.E.2d 538.) This rule is not absolute, however, and the plain error rule will apply where the evidence is closely balanced or the defect substantially affects the defendant's right to a fair trial. *Shields*, 143 Ill. 2d at 446.

Here defendant neither objected to the jury instructions given, nor tendered alternate instructions. Defendant's motion for a new trial did not address improprieties in the jury instructions. Defendant therefore waived any objections to jury instructions.

■ Despite this waiver, however, we will consider as a question of fundamental fairness the propriety of the jury instruction for aggravated kidnapping. Defendant contends that the plain error exception to the rule should apply because the instruction erroneously omitted an essential element of the crime. Fundamental fairness requires that the trial judge ensure that the instructions on the essential elements of an offense are given. *People v. Payne* (1990), 194 Ill. App. 3d 238, 246, 550 N.E.2d 1214.

Here the jury was instructed that to sustain a charge of aggravated kidnapping, the State must prove: first, that the defendant acted knowingly; second, that the defendant, by force or threat of imminent force, carried D.L. from one place to another; and third, that the defendant committed the offense of aggravated criminal sexual assault upon D.L.

According to the Illinois Pattern Jury Instructions, however, the instruction for aggravated kidnapping also includes the essential element that the "defendant secretly confined [the victim] against her will." Illinois Pattern Jury Instructions, Criminal, No. 8.05 (2d ed. 1981).

We agree with defendant that the instruction on aggravated kidnapping omitted an essential element of the crime. We find this error to be harmless, however, in light of two other factors. First, the jury was instructed properly that "a person commits the offense of kidnapping when he knowingly and secretly confines another person against his will." This instruction was given after the aggravated kidnapping instruction and would have helped to guide the jury as to the elements essential to defendant's conviction. In addition, the State argued in closing that it proved the defendant "secretly contained" the victim by dragging her to a secluded spot. Second, we find the evidence of defendant's guilt so overwhelming that the exception to the waiver rule does not apply. The victim and several witnesses testified to defendant's actions without contradiction by defense witnesses. Defendant's case was not so close factually that fundamental fairness requires reversal. *People v. Thurman* (1984), 104 Ill. 2d 326, 330, 472 N.E.2d 414.

■ Defendant's final challenge to the jury instructions is that the jury was improperly instructed not to concern itself with the possible punishment or sentence for the offense charged. The relevant instruction is Illinois Pattern Jury Instructions, Criminal, No. 1.01(4) (3d ed. 1992) (hereinafter IPI Criminal 3d No. 1.01(4)), which states:

"You are not to concern yourself with possible punishment or sentence for the offense charged during your deliberation. It is the function of the trial judge to determine the sentence should there be a verdict of guilty."

One of the committee comments is that this instruction should not be used unless the issue of punishment is raised during trial. The purpose of limiting the use of the instruction is to avoid injecting into the trial and the deliberations of the jury extraneous and irrelevant matters that have no bearing on defendant's guilt or innocence. *People v. Meeker* (1980), 86 Ill. App. 3d 162, 170, 407 N.E.2d 1058.

In the case *sub judice*, the issue of punishment was not raised during the trial, and at the conference on jury instructions defendant objected to the use of IPI Criminal 3d No. 1.01(4). The trial judge acknowledged that the use of the instruction was contrary to the statement in the committee comments, but he gave the relevant instruction over defendant's objection. Defendant also raised the issue of the improper use of the instruction in his post-trial motion which the trial court denied.

While we agree with defendant's contention that the trial court's use of the challenged instruction was improper, we find that instructing the jury on IPI Criminal 3d No. 1.01(4) did not result in any preju-

dice to defendant. Defendant argues that the improper instruction infringed upon the jury's power of lenity. The jury's power of lenity is applicable when the jury tenders verdicts which are logically inconsistent but where a determination is made that the apparent inconsistency "may reflect the jury's belief that conviction of less than all the charges would sufficiently punish defendant. [Citation.] It is well established that the jury's historic power of lenity prevails over traditional doctrine concerning inconsistent verdicts." *People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1025, 516 N.E.2d 382; see also *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755.

However, in the case *sub judice*, defendant's argument regarding the jury's power of lenity is misplaced where there was no inconsistency in the verdict. We also conclude that *People v. Shackles* (1977), 44 Ill. App. 3d 1024, 358 N.E.2d 1329, which defendant cites in support of his argument, is distinguishable. In *Shackles*, the trial court instructed the jury regarding a statute in effect at the time of the occurrence which provided that no person under the influence of intoxicating liquor was allowed to drive a vehicle within the State. Because there was no evidence of defendant's intoxication, the appellate court held that the tendering of this instruction was prejudicial and thus reversible error. (See *Shackles*, 44 Ill. App. 3d at 1025.) However, we find no comparable prejudice to defendant as a result of instructing the jury on IPI Criminal 3d No. 1.01(4). In addition, as we have already discussed, the evidence of defendant's guilt was not closely balanced but was clear and convincing. Therefore, we conclude that even though the giving of the instruction may have been improper, the error was harmless and did not require reversal. *People v. Terry* (1984), 99 Ill. 2d 508, 516, 460 N.E.2d 746; *People v. Ward* (1965), 32 Ill. 2d 253, 255-56, 204 N.E.2d 741.

Next we consider defendant's contention that three remarks by the State in the rebuttal portion of closing arguments so prejudiced his trial that his conviction should be reversed. First, the prosecutor noted that the victim had used drugs in the past, and then stated: "If any person that has ever used drugs becomes a viable rape victim; poor Betty Ford, poor everybody that's been to her clinic. They better open a rape advocacy clinic at the Betty Ford, because they just hand out targets, I used drugs, you can rape me."

Defendant argues that the references to drug users and the Betty Ford clinic only served to conjure up images of additional victims and inflamed the jury's passions about future crimes that could occur. Defendant relies on *People v. Fletcher* (1987), 156 Ill. App. 3d 405, 411, 509 N.E.2d 625, where the court found the prosecutor's closing

argument to be inflammatory and representative of the prosecutor's own opinion. In that sexual abuse case, involving a seven-year-old victim and a family member, the prosecutor stated that an acquittal would mean "a seven-year-old's testimony can never convict a defendant," and an acquittal would serve to "encourage potential sex offenders to abuse families." In reversing, the appellate court noted that the prosecutor persisted in making such comments, despite the trial court's sustaining of defense objections. The court held that the cumulative effect of the remarks was designed to arouse the prejudices of the jury without throwing any light on the question of defendant's guilt. *Fletcher*, 156 Ill. App. 3d at 412.

We do not believe the comment about drug users was on par with the severity of the language used in *Fletcher*. Nor do we find support in two other cases defendant relies upon which involved far more prejudicial comments by prosecutors. *People v. Hayes* (1989), 183 Ill. App. 3d 752, 539 N.E.2d 355 (prosecutor erred in detailing her personal experience with a near-rape to bolster the credibility of the victim's testimony about a rape); *People v. Crossno* (1981), 93 Ill. App. 3d 808, 821-24, 417 N.E.2d 827 (prosecutor erred by misstating the law, personally commenting on the credibility of witnesses and referring to defendant's potential sentence).

Defendant also cites error in the prosecutor's remarks that, "This is the guy, Mr. Innocent, no identification problem here, hiding in a closet in an abandon [*sic*] building, under a sheet." Shortly after the prosecutor concluded: "And at this point, after listening to all that evidence, now, you have the responsibility and you have the duty to reach down into the corner of that closet and to pull the sheets off this man and call him what he is. To remove that sheet, remove the cloak of innocence from him, at this time, because of the things that you have heard from up here."

Defendant contends these mocking references to his innocence effectively trivialized the presumption of innocence in his favor and thereby minimized the State's burden of proof. Defendant relies on cases where the court found that the prosecutors' comments resulted in violations of defendants' fifth amendment right to silence (*Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634; *People v. Anderson* (1986), 113 Ill. 2d 1, 495 N.E.2d 485; *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 334), and sixth amendment right to counsel (*People v. Meredith* (1980), 84 Ill. App. 3d 1065, 405 N.E.2d 1306).

The State argues that the defendant has failed to preserve for appeal any issues as to closing arguments because defendant made no

objections at trial (*People v. Richardson* (1988), 123 Ill. 2d 322, 340, 528 N.E.2d 612), and did not raise the issue in his motion for a new trial (*People v. Smith* (1985), 139 Ill. App. 3d 21, 27, 486 N.E.2d 1347). In addition, the State argues that the evidence of defendant's guilt was so overwhelming that any error was harmless. *People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970.

The record establishes that no objections were made at the time of closing arguments. In defendant's motion for a new trial, he contended only that prejudicial remarks by the State in closing involved statements allegedly made by the defendant which were never brought out at trial.

An appellate court must consider each case upon its own facts. In determining whether a prosecutor's comments are prejudicial, the court must refer to the content of the language that the prosecutor used, its relation to the evidence and the effect of the argument on the rights of the accused to a fair and impartial trial. *Fletcher*, 156 Ill. App. 3d at 411.

■■ We agree with the State that defendant waived his right to object to closing arguments. Defendant urges us to apply the plain error rule (134 Ill. 2d R. 615) and conclude that error occurred and the error was not harmless. We have found, however, that the evidence was not so closely balanced to merit the application of plain error. Even were we to consider the issue, *arguendo*, we deem that the closing arguments, viewed in their entirety, did not substantially prejudice defendant's right to a fair and impartial trial.

Defendant also contends the trial court erred by not vacating his conviction for aggravated kidnapping based on the judge's own observation at the sentencing hearing that the aggravated criminal sexual assault and the aggravated kidnapping "merged" and "should all be one act, one crime."

■■ Defendant argues that under *People v. Smith* (1980), 91 Ill. App. 3d 523, 529, 414 N.E.2d 1117, a charge of aggravated kidnapping cannot stand where the facts establish that: (1) the asportation, or removal of the victim from one place to another; was only for a short period of time; (2) occurred during the commission of a separate offense; (3) was inherent in the separate offense; and (4) offered no significant danger to the victim independent of that posed by the felony. *Smith*, 91 Ill. App. 3d at 529.

Defendant contends that here the facts established that the victim's confinement was a mere 50 feet from the location of the original altercation, lasted only five minutes, occurred during the commission of a separate offense which by its nature requires privacy and posed

no significant danger to the victim other than the danger incident to the separate felony.

Defendant cites in support *People v. Kuykendall* (1982), 108 Ill. App. 3d 708, 414 N.E.2d 1117, which did not involve aggravated kidnapping but instead involved home invasion and unlawful restraint. Defendant also cites *People v. Young* (1983), 115 Ill. App. 3d 455, 470, 450 N.E.2d 947, where the court found that the act of grabbing the victim and throwing her against a wall did not constitute kidnapping, a prerequisite to aggravated kidnapping. We find neither of these cases useful to our analysis.

The State contends that since no sentence was imposed on the aggravated kidnapping charge, defendant's appeal must be dismissed and the conviction cannot be vacated. (*People v. Flores* (1989), 128 Ill. 2d 66, 95, 538 N.E.2d 481.) The State argues further that separate convictions for aggravated kidnapping, rape and deviate sexual assault have been upheld. See *People v. Olesch* (1986), 143 Ill. App. 3d 577, 588, 492 N.E.2d 1381.

The State also relies on *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540, where a defendant was convicted of several crimes, including rape and aggravated kidnapping, but sentenced on the rape conviction only because the trial judge held that the aggravated kidnapping "would merge into the rape count." The appellate court affirmed the convictions but remanded the cause for sentencing on the aggravated kidnapping conviction. (*People v. Scott* (1977), 45 Ill. App. 3d 487, 359 N.E.2d 878.) The Illinois Supreme Court upheld the appellate court's remand. (*Scott*, 69 Ill. 2d 85.) The State argues that this court therefore is not barred from letting the dual convictions stand or permitting imposition of a sentence on each offense. More recent authority supports the State's position.

The court in *People v. Sherrod* (1991), 220 Ill. App. 3d 429, 436-37, 581 N.E.2d 53, applied the *Smith* factors to uphold a kidnapping conviction separate from a sexual assault conviction. The court there reasoned that the asportation from the street to a garage was not inherent in sexual assault and that forcing the victim into an alley and garage posed a significant danger to the victim separate from that posed by the sexual assault. (*Sherrod*, 220 Ill. App. 3d at 436; see also *People v. Riley* (1991), 219 Ill. App. 3d 482, 489, 579 N.E.2d 1008 (forced movement of a victim from one location to another place is not inherent in the offense of criminal sexual assault).

Kidnapping convictions have been upheld under the *Smith* test where the victim was transported half a block (*People v. Thomas* (1987), 163 Ill. App. 3d 670, 516 N.E.2d 901), and where the asporta-

tion lasted only a few minutes (*People v. Pugh* (1987), 162 Ill. App. 3d 1030, 516 N.E.2d 396).

■■ We hold that the trial court did not err when it denied defendant's request to vacate the aggravated kidnapping conviction and that defendant was properly convicted of both aggravated kidnapping and aggravated criminal sexual assault.

Finally, we consider defendant's challenge to his 55-year extended-term sentence on the aggravated criminal sexual assault, which he alleges was imposed in part based on an improper aggravating factor of the aggravated kidnapping charge. He contends also that the sentence was unjustifiably punitive.

Defendant contends that the 55-year sentence was unduly harsh and constituted an abuse of discretion where the evidence established that the offense was an "escalation of a social affair" and was a "drunken misunderstanding over sexual intentions." Defendant argues that the victim faced a "lack of apparent danger or aggravating physical harm" and asks this court also to consider the mitigating factor of alcohol.

Defendant contends that the trial court gave undue consideration to the aggravated kidnapping conviction when imposing sentence. Before imposing sentence the judge commented: "Also, maybe from a very technical standpoint, because there are two crimes, the aggravated criminal sexual assault and the aggravated kidnapping *** all in my mind merge *** I don't believe that there is an appropriate provision in the law that would allow me to give consecutive sentences on that. I believe it should all be one act, one crime."

Defendant offers *People v. Hornbuckle* (1972), 7 Ill. App. 3d 328, 332, 287 N.E.2d 294, as support for reducing defendant's sentence. However, in that case the defendant was a model parolee with several mitigating factors in his favor. In this case, the trial judge heard evidence of misconduct on defendant's part, both in and out of jail, including defendant's threatening of a prison guard, exposing himself numerous times to female staff and female visitors at the prison, and other physical assaults on male and female prison staff. The trial judge commented on defendant's "abominable" record both in and out of prison, found that defendant chose not to be rehabilitated and that he was a danger to society. In imposing a sentence, the trial judge stated that he found 55 years to be an appropriate sentence because it would "keep Mr. Rush in jail until he is about 55 years of age."

A trial judge's decision on sentencing is entitled to great weight and will not be disturbed absent a showing of an abuse of judicial discretion. (*People v. Webster* (1988), 175 Ill. App. 3d 119, 135, 529

N.E.2d 741.) In *Webster*, the appellate court upheld a 60-year extended-term sentence for aggravated criminal sexual assault.

■ The trial judge heard extensive testimony in aggravation and mitigation, and on appeal, defendant asks us to reweigh this evidence. We decline to do so. Considering the sentencing hearing as a whole, we find no abuse of discretion in sentencing defendant to an extended term (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2). We therefore affirm defendant's 55-year sentence for aggravated criminal sexual assault.

Affirmed.

McNAMARA, P.J., and EGAN* and RAKOWSKI, JJ.

---

*Justice LaPorta participated in this case before her death. Justice Egan has been substituted. He has read the briefs and has listened to the tape of the oral arguments.